IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:22-CV-39-D

| | | |
|---|---|---|
| SYLVIA EVERETT, *Administrator for the Estate of Marion Newsome*, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | O R D E R |
| ACCORDIUS HEALTH AT CREEKSIDE CARE, LLC, *d/b/a Accordius Health at Creekside Care*, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter comes before the court on the motion to compel arbitration and stay proceedings of Defendant, Accordius Health at Creekside Care, LLC ("Accordius Creekside"). [DE-6]. Plaintiff, Sylvia Everett filed a response in opposition, [DE-9], and Defendant filed a reply, [DE-10]. For the reasons that follow, the motion is denied without prejudice.

**I.     Background**

Plaintiff is the daughter of decedent Marion Newsome and the Administrator of Ms. Newsome's estate. Compl. [DE-1-1] ¶ 2. Accordius Creekside is a skilled nursing facility in Ahoskie, North Carolina. *Id.* ¶ 1. On November 30, 2016, Ms. Newsome was admitted to Accordius Creekside. *Id.* She was eighty-three years old, had recently suffered a stroke resulting in weakness and functional quadriplegia, and had a history of hypertension and Parkinson's Disease. *Id.* ¶¶ 16, 19. In April 2020, Ms. Newsome developed an "open area" on her buttocks, in May an open wound was noted, in June she was seen by Integrated Wound Care for a Stage II pressure ulcer, in early July worsening of the ulcer and abnormal weight loss was noted, and on

July 11, Ms. Newsome was transferred to a hospital where it was noted she had a sepsis infection secondary to the ulcer. *Id.* ¶¶ 29–43. Ms. Newsome was discharged to a rehabilitation facility on July 20, 2020, and she died on August 28, 2020. *Id.* ¶¶ 44–46. Plaintiff alleges Ms. Newsome suffered injuries during her time at Accordius Creekside that led to her death, and Plaintiff filed this action for medical negligence, ordinary negligence, wrongful death, and punitive damages against Accordius Creekside in Hertford County Superior Court. Defendant removed the action to this court based on diversity jurisdiction, [DE-1], and seeks to compel arbitration of the claims and to stay this proceeding, [DE-6].

## II.     Discussion

Defendant contends that when Ms. Newsome was admitted to Accordius Creekside she voluntarily executed a valid and enforceable arbitration agreement (the "Agreement"), by which she agreed to arbitrate any claims made against Accordius Creekside, including the claims asserted in this matter. Def.'s Mot. [DE-6] at 1–2; Ex. 2 [DE-6-2]. Defendant asks the court to enforce the Agreement and to stay this matter pending arbitration or alternatively, to stay merits-based discovery and allow limited discovery and an evidentiary hearing with regard to any challenge to the motion. *Id.* at 3. Plaintiff contends that due to Ms. Newsome's physical impairments from a stroke it was impossible for her to have affixed her signature to the Agreement, and therefore, the Agreement is unenforceable as to Ms. Newsome. Pl.'s Resp. [DE-9] at 2; Everett Aff. [DE-9-1].

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Newman v. First Montauk Fin. Corp.*, No. 7:08-CV-116-D, 2010 WL 2933281, at *4 (E.D.N.C. July 23, 2010). "By enacting the FAA, Congress created a 'presumption' in favor 'of arbitrability,'" and "a court must resolve any doubts in favor

of arbitration and compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Newman*, 2010 WL 2933281, at *5 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)). However, the presumption of arbitrability only applies where there is a validly formed and enforceable arbitration agreement, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010), and the court looks to state law contract principles to determine whether a valid and enforceable agreement exists, *Scales v. SSC Winston-Salem Operating, Co., LLC*, No. 1:17-CV-539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (citation omitted). Under North Carolina law, "a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." *Brown v. Fam. Dollar Stores of N. Carolina, Inc.*, No. 1:21-CV-977, 2022 WL 3576972, at *2 (M.D.N.C. Aug. 19, 2022) (quoting *Charlotte Motor Speedway, LLC v. County of Cabarrus*, 748 S.E.2d 171, 176 (N.C. Ct. App. 2013)).

The movant has the burden to demonstrate "a written agreement that includes an arbitration provision which purports to cover the dispute[.]" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quotation marks and citation omitted). "In disputed cases, the party opposing arbitration must unequivocally deny that there was an arbitration agreement and produce evidence to substantiate the denial." *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 264 (M.D.N.C. 2016). The court "may consider materials outside the pleadings, including the purported written agreement to arbitrate itself, to determine whether the parties agreed to arbitrate," and the court "accept[s] as true" the allegations in the complaint that "relate to the underlying dispute between the parties." *Harris v. Piedmont Fin. CNAC*, No. 5:20-CV-00669-M, 2021 WL 2459797, at *2 (E.D.N.C. June 16, 2021) (quoting *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 233–34 (4th Cir. 2019)).

Under the FAA, if the "making of the arbitration agreement be in issue," then "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. However, the court is "obliged to conduct a trial only when a party unequivocally denies that an arbitration agreement exists, and show[s] sufficient facts in support thereof, under a summary judgment standard." *See Harris*, 2021 WL 2459797, at 2 (citing *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234) (internal quotation marks omitted). When the existence of a valid and enforceable arbitration agreement is disputed, courts typically allow the parties to conduct discovery on the issue, which generally include applicable contract defenses. *Scales*, 2017 WL 4467278, at *3 (M.D.N.C. Oct. 5, 2017) (citing *Dillon v. BMO Harris Bank, N.A.*, No. 1:13-CV-897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) ("[I]f a party challenges the enforceability of an arbitration agreement, courts generally permit discovery regarding the formation and performance of the arbitration provision.")).

Here, the parties disagree on whether a valid and enforceable arbitration agreement exists. Accordius Creekside has come forward with a copy of the purported arbitration agreement between Marion Newsome and Creekside Care & Rehabilitation Center, LLC.[1] The Agreement provides that the resident and facility agree that "[i]f a dispute or legal claim of any kind . . . arises between the parties signing this agreement," the parties will (1) first, try to resolve the dispute informally; (2) next, mediate the dispute; and (3) finally, arbitrate the dispute. [DE-6-2] at 1, ¶ 1. It also provides that the Agreement "will be upheld and enforced against our heirs, beneficiaries, estates, estate representatives, successors, statutory wrongful death beneficiaries, and assigns." *Id.* ¶ 6. The Agreement is dated December 1, 2016 at 11:40:47 a.m. and indicates it was "DocuSigned by" Marion Newsome, Resident, and Amanda Flythe, Facility Representative. *Id.* at 4. Accordius

---

[1] According to Defendant, at the time the Agreement was executed, the facility was known as Creekside Care & Rehabilitation Center, LLC. Def.'s Reply [DE-10] at 1.

4

Creekside also provided copies of other documents it contends Ms. Newsome signed at the time of her admission. [DE-6-3].

Plaintiff, in support of her position that Ms. Newsome did not sign the Agreement, submitted an affidavit stating that she is Ms. Newsome's daughter; on December 1, 2016, the date the Agreement was purportedly signed, Ms. Newsome was eighty-three years old, did not have access to a computer or email, suffered from quadriplegia, hypertension, and Parkinson's Disease, and had recently had a stroke and was severely impaired; Ms. Newsome was physically unable to sign her name digitally even if she had access to a computer or email, making it impossible that Ms. Newsome affixed a digital signature to the Agreement; and no other individual had authority to sign legal documents on Ms. Newsome's behalf. [DE-9-1]. Defendant responded by submitting an affidavit from Amanda Flythe, who was the facility representative for Creekside Care when Ms. Newsome was admitted to the facility. [DE-10-1] ¶ 3. One of Ms. Flythe's duties was to facilitate all document and contract review necessary to coordinate admission of residents into the facility. *Id.* ¶ 4. Creekside Care used "DocuSign" to facilitate resident signatures in an electronic format, whereby the resident would indicate assent to the terms of the contract by either entering their initials or typing their signature when prompted or a combination of both. *Id.* Ms. Flythe was a "virtual witness" to Ms. Newsome's signature. *Id.* ¶ 5.

The evidence presented to the court by the parties creates a disputed question of material fact as to whether Ms. Newsome signed the Agreement. *See Boyles v. Langmore Cap., LLC*, No. 1:20-CV-545, 2020 WL 4719282, at *3 (M.D.N.C. Aug. 13, 2020) (finding disputed question of material fact as to whether there was an agreement to arbitrate where defendant presented evidence of an electronically signed agreement to arbitrate, and plaintiff presented evidence he did not sign the agreement). Defendant presented the Agreement with Ms. Newsome's purported signature

5

affixed electronically, and Plaintiff's affidavit states that, due to Ms. Newsome's health issues, she was incapable of even electronically signing the Agreement. Ms. Flythe's affidavit, while describing her role in facilitating document and contract review for resident admissions at the relevant time and the utilization of DocuSign to do so, does not indicate that she specifically remembers Ms. Newsome signing the Agreement. The import of Ms. Flythe being a "virtual witness" to Ms. Newsome's signature is unclear. Furthermore, Ms. Flythe's statement that "Ms. Newsome's electronic signature is a clear indication of her assent and agreement to the terms and conditions stated in the Arbitration Agreement" does not establish that Ms. Newsome, in fact, electronically signed the Agreement and is a legal conclusion not binding on the court.

Defendant also argues that equitable estoppel applies because Plaintiff cannot claim the benefit of the Agreement and subsequently avoid the burden by claiming Ms. Newsome did not sign the Agreement. Def.'s Mem. [DE-7] at 4–5. Defendant cites *Raper v. Oliver House, LLC* for the proposition that "[i]n the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." 180 N.C. App. 414, 422 (2006) (quoting *Ellen v. A.C. Schultes of Maryland, Inc.,* 172 N.C. App. 317, 321, 615 S.E.2d 729, 732 (2005), *disc. rev. and cert. denied,* 360 N.C. 575, 635 S.E.2d 430 (2006)). However, equitable estoppel is not applicable here because Plaintiff's claims do not depend on the Agreement. At issue here is a stand-alone arbitration agreement rather than a contract under which Plaintiff is claiming other rights but denying the enforceability of an arbitration clause within that agreement. *See Neusoft Med. Sys., USA, Inc. v. Neuisys, LLC*, 242 N.C. App. 102, 112, 774 S.E.2d 851, 859 (2015) (finding party was not equitably estopped from denying the applicability of the

6

arbitration clause in a distribution agreement where the party was not "simultaneously denying the enforceability of the arbitration clause in the Distribution Agreement . . . while also claiming a right under the Distribution Agreement," and the claims asserted did not depend on the contract containing the arbitration clause). Plaintiff asserts claims for negligence and wrongful death rather than contract claims dependent on the Agreement. As the North Carolina Court of Appeals explained when declining to apply equitable estoppel,

> [T]hough the contracts including the arbitration clauses form part of the factual basis of plaintiff's complaint, plaintiff does not seek any direct benefit from any provisions of these contracts in its suit against defendant. Plaintiff's complaint only includes claims for negligence and negligent misrepresentation, and does not include any contract claims. Therefore, "defendants' liability will be determined by its duties under North Carolina statutory and common law, not by its duties under the contracts . . . ."

*Harco Nat. Ins. Co. v. BDO Seidman, LLP*, 178 N.C. App. 234, 630 S.E.2d 743 (2006) (quoting *Ellen*, 172 N.C. App. at 322, 615 S.E.2d at 733). Accordingly, under the circumstances presented here, Plaintiff is not estopped from challenging formation of the arbitration agreement.

The disputed question of material fact as to whether Ms. Newsome signed the Agreement must be resolved in order for the court to determine whether an enforceable arbitration agreement exists. *See James v. RPS Holdings, LLC*, No. 1:20-CV-134, 2021 WL 5889479, at *10 (M.D.N.C. Dec. 13, 2021) (declining to apply the presumption favoring arbitration where the plaintiff raised a challenge to contract formation) (citing *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 385 (4th Cir. 2013) ("[A] court cannot apply any presumption in favor of arbitration unless there already exists an enforceable arbitration agreement between the parties.")). Accordingly, Defendant's motion to compel arbitration and to stay proceedings is denied without prejudice in order to allow the parties to conduct limited discovery on and for the court to resolve the issue of whether Ms. Newsome signed the Agreement.

7

## III. Conclusion

For the reasons stated above, the motion to compel arbitration and stay proceedings is denied without prejudice.

SO ORDERED, the 6th day of April, 2023.

Robert B. Jones, Jr.
United States Magistrate Judge