IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:22-cv-00039-D-RJ

**Sylvia Everett**,

                Plaintiff,

v.

**Accordius Health at Creekside Care, LLC**,

                Defendant.

**Order**

      Plaintiff Sylvia Everett is the administrator of the estate of her late mother, Marion Newsome. She sued Defendant Accordius Health at Creekside,[1] a skilled nursing facility, claiming that it provided inadequate care to her mother, leading to Newsome's death.

      Accordius asked the court to compel Everett to resolve this dispute through arbitration based on an arbitration clause Newsome allegedly signed when she entered the facility. Everett responded by claiming that her mother lacked the physical and mental capacity to enter a valid arbitration agreement. The court allowed the parties to conduct discovery on this issue before deciding whether to grant Accordius's motion.

      Given the evidence submitted by the parties, there is a genuine issue of material fact about whether Newsome could enter into the arbitration agreement and whether she did so. Thus, the court holds Accordius's motion in abeyance and will hold a bench trial on those issues.

---

[1] During the relevant period, the facility was known as Creekside Care & Rehabilitation Center, LLC. Def's Reply at l, D.E. 10.

I.  **Background**

In mid-November 2016, Newsome spent nearly two weeks in the hospital because of an infection and complaints of knee pain. Bessie Pierce Dep. at 6:13–23. The hospital discharged her on November 30, 2016, to Accordius so that she could receive additional care. When she arrived at Accordius her daughter Bessie Pierce was with her and signed certain documents. The next day, Newsome allegedly signed additional documents, including an arbitration agreement. Newsome remained at Accordius until her death in July 2020.

Everett claims that Accordius's negligence led to her mother's death. She sued the company in North Carolina Superior Court for various forms of negligence and wrongful death. The company removed the case and asked the court to compel Everett to submit her claim to arbitration. When Everett claimed that her mother lacked the capacity to enter into an arbitration agreement, the court ordered that the parties conduct discovery on that issue. After doing so, Accordius renewed its motion.

At this point, the parties dispute focuses on Newsome's mental and physical capabilities on December 1, 2016, the date she signed the arbitration agreement. At that time, Amanda Flythe served as Accorius's admissions coordinator. Amanda Flythe Dep. Tr. at 13:19–14: 12. In that role, she was responsible for, among other things, having new residents complete their admissions paperwork. *Id.* Residents completed this paperwork in a digital format on a laptop or tablet. *Id.* at 14:13–18; 18:1–12. Flythe would go to the resident's room, introduce herself, and explain the documents she wanted the residents to sign. *Id.* at 18:1–18.

Residents would indicate that they agreed to a document's terms by typing their initials, their full name, or some combination of the two. *Id.* at 14:19–15:12. If a resident asked Flythe to

Case 2:22-cv-00039-D-RJ   Document 28   Filed 04/04/24   Page 2 of 7

enter that information for them, she would do so. *Id.* at 15:13–16. The facility's software would then insert a digital signature on the document. *Id.* at 21:12–14.

Among the admission paperwork Newsome completed was an arbitration agreement. *Id.* at 22:19–22. Arbitration Agreement, D.E. 6–2. That document reflects that both Newsome and Flythe signed it just before Noon on December 1, 2016. Arbitration Agreement at 3.

Flythe, however, has no recollection of Newsome or working with her to complete any paperwork upon her admission. *Id.* at 8:1–2, 9:24–10:18, 15:17–19. And Flythe cannot explain why the paperwork was not completed until the day after Newsome arrived at the facility. *Id.* at 9:12–23.

Newsome's daughters, Everett and her sister, Bessie Pierce, claim that their mother lacked the physical and mental capabilities to enter into the arbitration agreement. They say that her medical conditions left her physically unable to type her name or initials on a tablet. According to her daughters, Newsome could not use her hands to do things like feed herself, bathe herself, dial a phone, or use a remote to control a television. Everett Dep. at 28:4–29:17, D.E. 23–4; Pierce Dep. at 16:12–17:18, D.E. 23–3. What's more, they point to documents from hospital visits just before Newsome's admission to Accordius that say she could not sign various documents due to her medical conditions. Nov. 17, 2016 Vidant Hospital Doc., D.E. 25–2 at 1165; Nov. 21, 2016 Vidant Hospital Doc., D.E. 25–2 at 1183.

And they also say that her mental state was diminished to a point where she could not validly agree to the arbitration agreement's terms. They point out that Accordius's records created a few days after her admission reflect that Newsome had an active diagnosis of non-Alzheimer's dementia. Resident Assessment and Care Screening, Section I, D.E. 25–5 at 1205.

3

And they note that Accordius administered a mental status exam that found Newsome was severely cognitively impaired. *Id.* at Section C, D.E. 25–5 at 1190.

The daughters also support their position by pointing to their personal experiences with their mother. Everett and Pierce say that while Newsome was lucid at times, there were other times when she was confused. Everett Dep. at 37:23–38:6; Pierce Dep. at 10:14–19. And Pierce claims that before her admission Newsome struggled to communicate and lacked the capability to make her own decisions. Pierce Dep. at 6:13–23, 8:8–20, 17:19–24.

Accordius disagreed with Newsome's daughters. It points to hospital records from the day of her discharge to Accordius showing Newsome was alert and oriented to time, place, and people. Discharge Summary at 1, D.E. 23–1. Those same records say that Newsome had "no focal deficits" other than issues with her right hand. *Id.* at 2. An evaluation conducted a week before Newsome's discharge also reported that Newsome's comprehension and ability to communicate were "within functional limits." Bedside Swallow Evaluation, D.E. 23–2 at 2. It also relies on the statements by Newsome's daughters that their mother was lucid at times.

## II. Discussion

The Federal Arbitration Act makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided" by the Act. 9 U.S.C. § 2. When one party to an arbitration agreement believes that another party has failed to honor the agreement's terms it "may petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. If, after hearing from the parties, the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue" it must order the parties to submit their dispute to arbitration. *Id.* But if there is a

4

dispute about whether the parties agreed to arbitrate their claim, the court must hold a trial to resolve that dispute. *Id.*

But district courts need not hold a trial in every case when the parties dispute whether a matter should be submitted to arbitration. Instead, a trial is necessary only when a party makes "an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support." *Chorley Enters., Inc.* v. *Dicky's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). To meet this factual burden, the party opposing arbitration, "must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law." *Id.*

The Fourth Circuit has explained that "[t]his standard is akin to the burden on summary judgment." *Id.* So "[i]f the record reveals a genuine dispute of material fact 'regarding the existence of an agreement to arbitrate,'" the court must hold a trial on that issue. *Berkeley Cnty. Sch. Dist.* v. *Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (quoting *Chorley Enters.*, 807 F.3d at 564). And as in the context of a summary judgment motion, "[a] factual dispute is material if the resolution thereof 'might affect the outcome of the [motion] under the governing law.'" *Id.* (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Here, Everett has unequivocally denied that a valid arbitration agreement existed because her mother lacked the mental and physical capacity to validly enter a contract with Accordius. If true, that would be a valid ground to deny Accordius's motion. *See O'Neal* v. *O'Neal*, 254 N.C. App. 309, 314, 803 S.E.2d 184, 188 (2017) ("[W]hen a mentally incompetent person executes a contract or deed before their condition has been formally declared, the resulting agreement or transaction is voidable.").

The evidence establishes a genuine issue of material fact about whether Newsome signed the arbitration agreement and whether she had the mental capacity to enter a contract. Both sides present evidence that, if believed by the finder of fact, would compel a ruling in their favor on that issue. On one hand, Everett provided the court with documentary and observational evidence indicating that her mother could not sign the agreement and was severely mentally impaired. On the other hand, Accordius presented documentary evidence and testimony that supports its position that Newsome was competent to enter a contract and that, despite her physical limitations, she could have completed the paperwork with help from one of its staff. This type of dispute needs to be resolved through a trial.

The FAA also provides when this type of dispute must be resolved through a jury trial and when it can be resolved through a bench trial. If the party opposing arbitration did not request a jury trial on the question of arbitrability, then "the court shall hear and determine such issue." 9 U.S.C. § 4. To invoke a right to a jury trial, the non-moving party must "demand a jury trial of such issue" and do so "on or before the return day of the notice of application" for an order compelling arbitration. *Id.* Thus Everett must have requested a jury trial on the issue of arbitrability in its response to Accordius's motion to compel arbitration. *Berkeley Cnty*, 944 F.3d at 242 n.16 (citing *Burch* v. *P.J. Cheese, Inc.*, 861 F.3d 1338, 1349 n.19 (11th Cir. 2017)). A general request for a jury trial in a complaint does not meet this requirement. *Burch*, 861 F.3d at 1349–50. Everett's responses to Accordius's motions do not include a jury trial request. As a result, she has waived any right to a jury trial on this issue. *Id.* So the dispute over whether Newsome was physically and mentally capable of entering into the arbitration agreement and whether she actually entered into he agreement must be resolved through a bench trial.

6

Case 2:22-cv-00039-D-RJ    Document 28    Filed 04/04/24    Page 6 of 7

### III. Conclusion

In light of the existence of a genuine issue of material fact about whether Newsome signed the arbitration agreement and whether she had the mental capacity to enter a contract, the court must hold a bench trial on those issues. The resolution of Accordius's motion is held in abeyance until after that trial. An order will follow setting trial-related deadlines.

Dated: April 4, 2024

_____
Robert T. Numbers, II
United States Magistrate Judge